UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

Case Number 18-20110
Honorable David M. Lawson

JAMIE MORENO,

Defendant.

________________________________________/

**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**

Defendant Jamie Moreno has filed motions asking the Court to reduce his prison sentence to time served under the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. Moreno argues that his release is justified by extraordinary and compelling circumstances, consisting of his medical conditions that include obesity, hypertension and diabetes, which he contends increase his risk from possible infection with the COVID-19 disease. Because Moreno has not shown that "extraordinary and compelling reasons warrant such a reduction," as section 3582(c)(1)(A)(i) requires, his motion to reduce his sentence will be denied.

I.

Moreno pleaded guilty to charges of conspiracy to distribute controlled substances, 21 U.S.C. § 846, and money laundering conspiracy, 18 U.S.C. § 1956(h). On April 29, 2019, Judge Marianne Battani sentenced him to concurrent terms of 120 months in prison on both counts. He has served approximately 16 months of his prison sentence, and he presently is held in the custody of the Bureau of Prisons (BOP) at USP Lompoc, a medium security facility in Lompoc, California, that houses around 1,200 inmates. Public records of the BOP indicate that Moreno is scheduled to be released from prison on December 4, 2027. He is 29 years old.

On September 16, 2020, Moreno filed through his appointed counsel a motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018. In his motion, Moreno argued that he is qualified for release because of his severe obesity, hypertension, and diabetes. The government opposes the motion on the merits.

The most recent data disclosed by the BOP indicates that there are no active coronavirus cases among inmates and only four among staff at the Lompoc facility. However, 151 inmates and 24 staff previously were infected and now have recovered. Reports indicate that two inmates have died. *See* https://www.bop.gov/coronavirus/.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). Moreno relies on subparagraph (i) of the statute. Under that provision, the

Court can order a reduction of a sentence, even to time served, *first*, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," *second*, if "extraordinary and compelling reasons warrant such a reduction," and *third*, if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (en banc) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it").

The government concedes that the request for release has been properly exhausted, so that threshold requirement for relief has been satisfied. It also concedes that Moreno's morbid obesity and Type 2 diabetes are recognized serious medical risk factors for anyone who falls ill with the coronavirus. Nevertheless, the government argues that because the defendant only has served a small fraction of his mandatory prison term, and because he would pose a danger to the community, release is not warranted in this case.

The defendant has not advanced sufficiently compelling circumstances to warrant a sentence reduction based on his diagnosed medical conditions, even though two of his observed health factors (obesity and diabetes) comprise recognized risk factors for complications from coronavirus infection. Moreno's showing on the second element that he must establish to justify compassionate release — extraordinary and compelling reasons — is insufficient, so it is unnecessary to discuss the other elements. His health concerns are understandable, but insufficient to warrant immediate release.

The defendant is justifiably concerned about the health risks posed by his incarceration. "The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications and death. Because there is no current vaccine, the Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." *United States v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ortiz*, 2020 WL 3640582, at *2 (collecting cases; footnotes omitted).

It is widely recognized and publicly acknowledged that persons with certain medical conditions face an increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassister*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease

2019 (COVID-19), People Who Are At Risk for Severe Illness, Centers for Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16). The defendant's age (29) does not put him in a high-risk category, but obesity and Type 2 diabetes are recognized medical risk factors. *See* CDC, Risk Factors: People With Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

Medical records of an exam from June 22, 2020 noted the defendant's height as 5' 5" and his weight as 308 pounds. Those figures result in a calculated body mass index (BMI) of 51.2, an extreme excess above the obesity threshold of 30, which the government concedes is a recognized serious medical risk factor. *See* Medical Report dated June 22, 2020, ECF No. 52, PageID.217. The same notes also indicate a diagnosis of Type 2 diabetes. The government concedes that diagnoses of extreme morbid obesity and Type 2 diabetes comprise a sufficient showing of medical risk, and federal courts have held that even one of these two serious risk factors would suffice. *United States v. Hall*, No. 18-00179, 2020 WL 5077085, at *3 (E.D. Tenn. Aug. 27, 2020) ("Hall's medical records only confirm he has Type 2 diabetes mellitus and hypertension. Of these two conditions, the Centers for Disease Control and Prevention (CDC) recognizes that only Hall's diabetes renders him at an 'increased risk for severe illness from COVID-19.' The United States concedes that 'Hall has thus shown an extraordinary and compelling reason for release.'").

The June 22, 2020 medical notes also indicate a diagnosis of essential hypertension, for which the defendant has been prescribed medication. The CDC states that individuals with hypertension "*might* be at an increased risk for severe illness from COVID-19." CDC Risk Factors, *supra* (emphasis added). Drilling down, though, that condition is grouped with "serious heart conditions" that predispose a person to higher risks of complications. Also included are "heart failure, coronary artery disease, congenital heart disease, cardiomyopathies, and pulmonary

hypertension." *Ibid.* Although the CDC recognizes "pulmonary hypertension" as a serious heart condition that may put people at a higher risk of severe COVID-19-related complications, federal courts have held that essential or systemic hypertension, in contrast with a more serious specific diagnosis of pulmonary hypertension, does not constitute a recognized serious risk factor for coronavirus infection. *E.g.*, *United States v. Allen*, No. 15-00139, 2020 WL 5573820, at *5 (M.D. Tenn. Sept. 17, 2020) ("Defendant's diagnosis of high blood pressure, which Defendant's medical records do not indicate is a specific, or otherwise serious form of high blood pressure, does not constitute an extraordinary and compelling reason for compassionate release. This is especially true because Defendant does not allege that the BOP facility in which he is incarcerated is not adequately managing his condition, and Defendant's medical records indicate that his condition is in fact being managed with medication while he is incarcerated.") (collecting cases); *see also Hall*, No. 18-00179, 2020 WL 5077085, at *3.

Nevertheless, even if the defendant has made the required showing of extraordinary medical risk, the absence of any present infections among inmates at his facility mitigates against a finding that release is warranted in this case.

Published reports suggest that officials at USP Lompoc recently have succeeded in quelling the pandemic, although the historical tally of 151 inmate infections certainly shows that the outbreak there was widespread and serious. The government's position that the defendant is at little or no risk is less reassuring considering the BOP's admitted failure to implement any comprehensive prophylactic testing program, which calls into doubt the figures that it has reported. *See Wilson*, 961 F.3d at 849 (Cole, J., concurring) (observing that in the absence of any program of comprehensive prophylactic testing, reports of low infection rates are questionable at best); *see also United States v. Campbell*, No. 03-4020, 2020 WL 3491569, at *9 (N.D. Iowa June 26, 2020)

(same). The available information indicates that Moreno's risk of infection is as low as it would be at home, and perhaps lower since the measures taken by BOP appear to have halted the outbreak at Lompoc despite the recent acceleration of the pandemic among the public at large, including in California, where recent daily case counts have remained at alarmingly elevated levels, despite falloff from spring peaks. *See* Coronavirus Statistics: California, https://www.worldometers.info/coronavirus/usa/california/.

Despite the ongoing hazards of the pandemic, it has been widely held that the mere possibility that COVID-19 may spread to a particular prison cannot independently justify compassionate release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). A "generalized risk of contracting COVID-19 and potentially developing the more severe symptoms is not akin to the type of 'extraordinary and compelling reasons' justifying compassionate release identified by the Sentencing Commission." *United States v. Peaks*, No. 16-20460, 2020 WL 2214231, at *2 (E.D. Mich. May 7, 2020). "[O]n similar facts this Court has declined to order the release of otherwise healthy . . . inmates with obesity as their only cognizable risk factor, absent other indications of serious medical risk," particularly where they were confined at institutions with few or no active coronavirus cases. *United States v. Price*, No. 15-20472, 2020 WL 5440164, at *5 (E.D. Mich. Sept. 10, 2020) (collecting cases). There are no distinguishing facts here that warrant a different result, particularly in light of the relatively low risk of infection.

III.

Moreno has exhausted his administrative remedies, but he has not demonstrated that compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motion for compassionate release (ECF No. 47) is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: October 21, 2020